UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADEEL ZAMAN,<br><br>    Plaintiff,<br><br>v.<br><br>KELLY SERVICES, INC.,<br><br>    Defendant. | Case No.15-cv-04601-HRL<br><br>**ORDER ON MOTIONS FOR ATTORNEY FEES AND COSTS**<br><br>Re: Dkt. Nos. 73, 74, 75, 76 |

In September 2016, the court granted summary judgment in favor of Defendant Kelly Services, Inc. ("Kelly") on five of six claims brought by plaintiff Adeel Zaman ("Zaman"), including employment discrimination claims under the Fair Employment and Housing Act ("FEHA"). Dkt. No. 42. Upon the parties' stipulation, the court dismissed the remaining claim (for injunctive relief pursuant to California Labor Code Section 1198.5) in March 2017. Dkt. No. 72. Kelly now moves for $75,038.50 in fees and $5,790.36 in costs related to Zaman's FEHA claims. Dkt. Nos. 73, 74. Zaman moves for $55,950.00 in fees and $2,399.85 in costs related to his Labor Code Claims, Dkt. Nos. 75, 76, and he further requests $1,425.50 for opposing Kelly's motion, Dkt. No. 80. For the reasons described below, the court grants each motion in part.

**BACKGROUND**

Zaman, a veteran of the US Marine Corps and a Pakistani- and Muslim-American, was employed by Kelly, a temporary employment agency. Kelly terminated Zaman's employment in January 2015 after he plead no contest to a misdemeanor count of simple battery. The letters Kelly sent Zaman explaining this action (dated January 22 and 29, 2015, respectively) did not state that he was terminated, but rather said, "Kelly is considering denying you an offer of employment" based on Zaman's "pre-background screen," and later that "an offer of employment will not be made to you at this time." Dkt. No. 81, Connaughton Decl., Exs. 7, 8.

1  Zaman brought suit against Kelly several months later. Dkt. No. 1, Ex. A. Zaman's first three claims alleged discriminatory termination on the basis of his religion, ethnicity, and perceived disability in violation of FEHA. His fourth claim alleged wrongful termination. And his fifth and sixth claims were for a statutory penalty and injunctive relief, respectively, under California Labor Code Section 1198.5. *Id.*

Zaman's Labor Code claims were based on Kelly's failure to provide him with his personnel file after Zaman submitted a written request for those documents in March 2015. Kelly concedes that it did not provide a copy of the requested records within the 30-day time period specified in Section 1198.5 or before Zaman filed suit. Dkt. No. 71, ¶ 2. Kelly asserts that it provided the personnel file to Zaman on July 17, 2015. Dkt. No. 71, ¶ 4; Dkt. No. 81, Connaughton Decl., Ex. 2. Nevertheless, Zaman asked for the file in his first set of Requests for Production on July 20, 2015. Dkt. No. 81, Connaughton Decl., Ex. 3. Kelly states that it produced the file again on August 24, 2015. *Id.*, Ex. 4.

After its initial document production, Kelly produced copies of the January 22 and January 29 adverse action letters described above. The letters, however, were dated June 24, 2015, and August 19, 2015 (i.e., after the complaint was filed). *See* Dkt. No. 81, Connaughton Decl., Exs. 12, 13. When questioned about this oddity, *id.*, Kelly responded that it was unable to locate the original versions of these letters at the time of its initial document production, and that it produced "identical form version[s]" of the letters. *Id.*, Ex. 13. In any event, Zaman sent copies of the original letters to Kelly as part of his own production on August 20, 2015. *Id.*, Exs. 6, 7, 8.

Late in discovery, on June 24, 2016, Kelly took Zaman's deposition. *Id.*, Ex. 1. During his deposition, Zaman conceded that he eventually received his personnel file, though Zaman's counsel objected to the question and Zaman clarified a few moments later that he "still [did not] have all the answers that [he was] looking for." Dkt. No. 30, La Val Decl., Zaman Dep., 167:9-168:4. Also during his deposition, Zaman admitted that he had no direct evidence of any Kelly employee's bias against Muslims, people of Pakistani descent, or people with disabilities, and, further, that he had "no reason to believe" any Kelly employee was so biased. *Id.*, at 74:18-76:23.

Fact discovery was set to close on July 14, 2016. Dkt. No. 18. The parties, however, in a

2

July 25, 2016, stipulation, stated that "a deposition of Kelly and possibly one of its employees" had yet to occur. Dkt. No. 28. Apparently, Zaman never took these depositions. Dkt. No. 81, Connaughton Decl., ¶ 15. Additionally, Zaman never filed a motion to compel disclosure of any missing pieces of his personnel file. Dkt. No. 81, Connaughton Decl., ¶ 15.

Kelly filed its motion for summary judgment on August 8, 2016. On September 28, 2016, the court granted summary judgment on the three FEHA claims and the wrongful termination claim. Dkt. No. 42. The court concluded that Zaman failed to establish a prima facie case (by failing to produce evidence establishing an inference of discrimination), that Kelly established a legitimate, nondiscriminatory reason for the termination (Zaman's no contest plea for battery), and that Zaman failed to show that this reason was pretextual. *Id.* The court granted summary judgment on Zaman's fifth claim for a statutory penalty under Labor Code Section 1198.5 after Kelly tendered the $750 penalty to Zaman. *Id.* The court denied Kelly's motion with respect to Zaman's sixth claim, for injunctive relief under Section 1198.5, on the basis that a material fact—whether Zaman had received his entire personnel file—remained in dispute. *Id.*

The parties continued litigating the claim for injunctive relief through the pre-trial conference in February 2017. Dkt. No. 70. Finally, in March 2017, rather than proceeding to trial, the parties stipulated to dismissing the remaining claim without prejudice and to each side moving for attorney fees and costs. Dkt. Nos. 71, 72. Zaman maintains that his "complete accurate file has yet to be produced." Dkt. No. 71, ¶ 4.

## **DEFENDANT'S MOTION FOR ATTORNEY FEES**

Kelly's motion seeks attorney fees and costs related to Zaman's FEHA claims. Dkt. No. 73. Kelly asserts that it prevailed on these claims and that it is entitled to fees pursuant to California Government Code Section 12965. *Id.* As such, Kelly requests $75,038.50 in fees and $5,790.36 in costs incurred from June 24, 2016, the date of Zaman's deposition—at which time, Kelly argues, it should have become clear to him that his FEHA claims were frivolous, groundless, or unreasonable, since he admitted the absence of evidence supporting these claims—

to September 28, 2016, the date of the court's summary judgment order.[1] *Id.*

Zaman opposes Kelly's motion, arguing that his claims were not frivolous. In particular, he asserts that Kelly's confusing and inaccurate letters containing the so-called reasons for his termination, compounded by the odd sequence of events with respect to the production of these letters, yielded an inference that his termination was due to discrimination—or, at least, that Kelly was not being entirely truthful. Dkt. No. 80. Zaman further argues that he only learned about Kelly's nondiscriminatory reason for his firing upon receiving the declarations attached to Kelly's summary judgment motion. *Id.* Finally, Zaman requests that the court sanction Kelly for manufacturing evidence during discovery (i.e., producing letters with altered dates) by awarding him the $1,425.50 he incurred in opposing Kelly's fee motion. *Id.*

## LEGAL STANDARD

Federal courts sitting in diversity apply state law in determining both a party's rights to fees and the method of calculating them. *Mangold v. Cal. Pub. Util. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995). The standard for a defendant's recovery of attorney fees in employment discrimination matters is the same under California law (Cal. Gov. Code § 12965) as it is under the relevant federal statutes. *Bond v. Pulsar Video Prods.*, 50 Cal. App. 4th 918, 921 (1996).

A district court has discretion to award attorney fees to a prevailing defendant in a FEHA action "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation [i.e., groundless]." *Christiansburg Garment Co. v. Equal Emp't Opportunity Comm'n*, 434 U.S. 412, 421-22 (1978). Such an award need not cover the entire litigation, but "may be limited to the period after events demonstrate[d]" the claims' groundlessness. *Moss v. Associated Press*, 956 F. Supp. 891, 896 (C.D. Cal. 1996); *Williams v. Chino Valley Indep. Fire Dist.*, 61 Cal.

---

[1] Kelly also requests that the court take judicial notice of the transcript of the domestic violence restraining order hearing of October 30, 2014. Courts may take judicial notice of proceedings before other courts that have a "direct relation to matters at issue." *Trigueros v. Adams*, 658 F.3d 983, 987 (9th Cir. 2011). The fact that Zaman plead no contest to a charge of battery is related to matters before the court. But Kelly submitted no evidence that it relied on this transcript—from a different hearing—in deciding to terminate Zaman, and so the court fails to see how it is directly related to the motions for attorney fees. The request for judicial notice is denied. *See Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983, 991 n.8 (9th Cir. 2012) (denying a request for judicial notice of court proceedings without a direct relation to matters at issue).

4

4th 97, 99-100 (2015) (applying the same standard under Government Code Section 12965(b)). In setting out this standard in *Christiansburg*, the Supreme Court, mindful of the danger of discouraging meritorious suits, cautioned district courts about hindsight bias:

> It is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight bias could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success.

434 U.S. at 421-22. The Court reminded judges that litigation is unpredictable, and that "decisive facts may not emerge until discovery or trial." *Id.* at 422.

**DISCUSSION**

There is no dispute that Kelly prevailed on Zaman's FEHA claims. The question is (1) whether Zaman's claims were "frivolous, unreasonable, or groundless," and, (2) if so, when Zaman should have known that they had become so.

The court's summary judgment order determined that Zaman's theory of Kelly's liability did not "rise above the level of speculation" and that there was no persuasive evidence of discrimination. Dkt. No. 42. Further, Zaman lacked evidence that Kelly's nondiscriminatory reason for the termination was pretextual. *Id.* Under similar circumstances, courts have concluded that a discrimination claim was frivolous or unreasonable. *Bond v. Pulsar Video Prods.*, 50 Cal. App. 4th 918, 924 (1996); *Moss v. Associated Press*, 956 F. Supp. 891, 895-96 (C.D. Cal. 1996). The court reaches the same conclusion here.

Kelly argues that Zaman should have known that continued pursuit of his claims was unreasonable at the time of his deposition on June 24, 2016. On that date, he admitted that he had no direct evidence of any Kelly employee's bias against Muslims, people of Pakistani descent, or people with disabilities, and that he had "no reason to believe" Kelly employees were biased.

The court, however, is not persuaded that Zaman lacked an objective basis for believing his case had potential merit at that time. On the date of his deposition, Zaman still had a month remaining in fact discovery. Additionally, he seems to have been planning to depose "Kelly and possibly one of its employees" even after the fact discovery cut-off of July 14, 2016 (though he

apparently never took these depositions). Dkt. No. 28. Thus, his statements that he lacked direct evidence of discrimination could be read not as an acknowledgment that no such evidence existed, but as a concession that it was not yet in his hands.

In light of the non-explanation Kelly had given him for his termination—the adverse action letters did not even acknowledge that he had been terminated, but instead claimed that he was not being hired—and Kelly's failure to produce these same letters back to him in discovery, the court concludes that Zaman had an objective reason for suspecting Kelly's forthrightness. This rendered reasonable his continued efforts to uncover the truth, which could potentially have included discriminatory motives for his termination. In reaching this conclusion, the court is mindful of the Supreme Court's warning concerning hindsight bias. And, as the California Supreme Court recently concluded, "an unsuccessful FEHA plaintiff should not be ordered to pay the defendant's fees or costs unless the plaintiff . . . continued litigating the action without an objective basis for believing it had *potential* merit." *Williams v. Chino Valley Indep. Fire Dist.*, 61 Cal. 4th 97, 99-100 (2015) (emphasis added).

Of course, by the time Kelly had filed its motion for summary judgment and no evidence of discrimination had materialized, Zaman *then* should have known that continued litigation of his FEHA claims was unreasonable. The date of the final two depositions of Kelly and "possibly one of its employees" could also have been such a time; but as Zaman did not conduct these depositions, the court cannot fix a date certain for that occasion. Additionally, Kelly filed its motion for summary judgment only two weeks after the parties' stipulation acknowledging the remaining two depositions, so it is not as though months passed in which Zaman should have conducted the depositions, if he were going to do so.

Zaman's arguments opposing Kelly's motion for fees support the court's conclusion that continued pursuit of the FEHA claims became unreasonable when Kelly moved for summary judgment. Zaman argues that the confusion about his personnel files and the reasons for his termination gave him cause to be suspicious. But, as noted above and in the summary judgment order, in the absence of any evidence of discrimination at the end of discovery, Zaman's suspicions were not enough to create an inference of discrimination. As the court cannot fix a date

for the actual end of fact discovery, the filing of the summary judgment motion will have to do.

The court's calculation of Defendant's fee award is included below, following the discussion of Plaintiff's motion.

## ZAMAN'S REQUEST FOR SANCTIONS

As Zaman did not file a motion to compel or any other discovery dispute report related to Kelly's conduct during discovery (which was clumsy, but seemingly not ill-intentioned), the court determines that his request for sanctions is ill-founded. *See* Fed. R. Civ. P. 37.

## PLAINTIFF'S MOTION FOR ATTORNEY FEES

Zaman's motion seeks $55,950.00 in fees and $2,399.85 in costs related to his two claims under California Labor Code Section 1198.5. He argues that he prevailed by securing the $750 statutory penalty and by changing Kelly's behavior—that is, by causing Kelly to produce the personnel file, which it had not done before the lawsuit was filed—even though he maintains his position that the entire accurate file has not yet been produced. To compensate him for the time spent pursuing his Labor Code claims, Zaman requests 40% of his total fees leading up to the summary judgment order and 100% of his fees incurred after that date (when the Labor Code claim was the only remaining issue).

Kelly opposes Zaman's motion. First, Kelly disputes whether Zaman is entitled to fees as a prevailing party because he did not win a net judgment in his favor. Second, Kelly argues that Labor Code Section 1198.5 does not permit fees for litigants who obtain the statutory penalty and not injunctive relief. And third, Kelly asserts that Zaman should not recover under a catalyst theory because he conveyed no benefit to the public or a large class of persons. Finally, if the court concludes Zaman is entitled to fees, Kelly argues that his request is over-inclusive. Kelly criticizes the 40% allocation and contends that many of Zaman's claimed hours were not reasonably spent in light of Kelly's production of the personnel file as early as July 17, 2015.

## LEGAL STANDARD

Labor Code Section 1198.5 gives current and former employees the right to inspect and receive a copy of their personnel records. Cal. Lab. Code § 1198.5(a). Upon receiving a written request for records from a current or former employee or a representative, an employer must

"make the contents of those personnel records available" or provide a copy within 30 days. *Id.*, § 1198.5(b)(1). If an employer fails to timely provide access to or copies of the records, the employee is entitled to a $750 penalty. *Id.*, § 1198.5(k). The statute also permits employees to bring actions for injunctive relief "to obtain compliance with this section," and such an employee "may recover costs and reasonable attorney's fees in such an action." *Id.*, § 1198.5(*l*).

Though no longer a viable theory of recovery under some federal laws, *see Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health and Human Resources*, 532 U.S. 598, 610 (2001), California still permits recovery of attorney fees under a catalyst theory pursuant to California Code of Civil Procedure Section 1021.5. *Tipton-Whittingham v. City of L.A.*, 34 Cal. 4th 604, 610 (2004). The catalyst theory allows awards of attorney's fees when plaintiffs do not prevail via judicial resolution, but "the defendant changes its behavior substantially because of, and in the manner sought by, the litigation." *Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 560 (2004). To succeed under a catalyst theory, not only must the plaintiff have motivated a change in defendant's behavior, the lawsuit must also have merit—that is, defendant's change in behavior must be due to the threat of victory, not the threat of nuisance and expense. *Graham*, 34 Cal. 4th 553, 575. Additionally, the plaintiff must attempt to settle the matter before litigating. *Id.* at 577 ("[A] plaintiff must at least notify the defendant of its grievances and proposed remedies and give the defendant the opportunity to meet its demands within a reasonable time."). To recover under a catalyst theory, the plaintiff need not have achieved success on all of his or her claims. *Bowan v. City of Berkeley*, 131 Cal. App. 4th 173, 178 (2005).

Finally, to recover attorney fees under Section 1021.5, the successful party's action must have "resulted in the enforcement of an important right affecting the public interest" and conferred a "significant benefit" on "the general public or a large class of persons." *Id.*, at 176. Though the public "always has a significant interest in seeing that laws are enforced" and thus "always derives some benefit when illegal private or public conduct is rectified," the trial court must "determine the significance of the benefit and the size of the class receiving that benefit by realistically assessing the gains that have resulted in a particular case." *Baxter v. Salutary Sportsclubs, Inc.*, 122 Cal. App. 4th 941, 945 (2004) (quoting *Flannery v. Cal. Highway Patrol*, 61 Ca. App. 4th

629, 635 (1998)).

**DISCUSSION**

As Zaman has not achieved a judicially recognized form of relief, including an injunction or an order instructing Kelly to pay the $750 statutory penalty (which Kelly voluntarily tendered), if he is to recover attorney fees, it must be under a catalyst theory—that is, under Cal. Code Civ. Proc. § 1021.5, not Cal. Lab. Code § 1198.5. The court now turns to whether Zaman is entitled to fees under such a theory.

The court is persuaded that Zaman succeeded on his Section 1198.5 claims. Prior to filing his lawsuit, Zaman sent a written request for his personnel records to Kelly and Kelly did not respond within the statutorily required time-frame. After Zaman filed his lawsuit, Kelly produced the file through discovery. Kelly also voluntarily offered the $750 statutory penalty for non-compliance. Given this sequence of events, the court concludes that Zaman's lawsuit was a substantial factor causing Kelly's change in behavior (i.e., the shift from withholding to producing the records). Further, Zaman did not succeed by dint of nuisance or threat of expense, but because of the merit of his Labor Code claims—Kelly does not dispute that it failed to provide the personnel files within the statutory timeframe. The court also concludes that Zaman's written demand for his records satisfied *Graham*'s requirement that the plaintiff attempt to resolve the dispute before filing suit.

Zaman's suit resulted in the enforcement of an important right affecting the public interest—the right of an individual to gain access to or a copy of his or her personnel files from a current or former employer. *Cf. Escriba v. Foster Poultry Farms*, No. 1:09-cv-1878 OWW MJS, 2011 WL 4565857, at *10 (E.D. Cal. Sep. 29, 2011) (awarding fees on a catalyst theory where plaintiff's action succeeded on a labor code claim). As to whether Zaman's success conferred a significant benefit on the public or a large class of individuals, the court is persuaded that Zaman's success in enforcing the right of access to personnel records benefitted the class of persons whom Section 1198.5 was intended to protect—i.e., employees—by rectifying unlawful conduct that violated a policy of the state. *See id.*, (awarding fees on a catalyst theory involving Plaintiff's claim for unpaid wages); *Belth v. Garamendi*, 232 Cal. App. 3d 896, 902-03 (1991) (awarding

9

catalyst fees to a single plaintiff for enforcing the provisions of the Public Records Act).[2] As a result, the court concludes that Zaman may recover fees on a catalyst theory.

## **CALCULATING THE FEE AWARDS**

In calculating the amount of fees to award, the court begins with a lodestar figure. The lodestar amount is "the product of the number of hours 'reasonably spent'" by the attorneys on the litigation and the attorneys' reasonable hourly rate. *Meister v. Regents of the Univ. of Cal.*, 67 Cal. App. 4th 437, 455 (1998); *Serrano v. Unruh*, 32 al. 3d 621, 635, 639 (1982). The reasonable hourly rate is the "hourly amount to which attorneys of like skill in the area would typically be entitled." *Ketchum v. Moses*, 24 Cal. 4th 1122, 1133 (2001). Once the lodestar figure is determined, the court may adjust that figure based on the novelty and difficulty of the questions involved in the litigation, the skill of the attorneys in presenting them, the attorneys' opportunity cost in pursuing the litigation, and the contingent nature of the fee award, if relevant. *Id.*, at 1132. Absent reasons making such an award unjust, a litigant may typically recover compensation for hours reasonably spent in establishing and defending the claim for fees, as well. *Id.*, at 1141; *Serrano v. Unruh*, 32 Cal. 3d at 639. The fee applicant bears the burden of documenting the hours spent and submitting evidence as to those hours; the party opposing the application bears the rebuttal burden of challenging the reasonableness of the hours submitted. *Gates v. Gomez*, 50 F.3d 525, 534 (9th Cir. 1995).

A district court may, but need not, award a plaintiff who has succeeded on only some of his or her claims fees for efforts related to the unsuccessful claims. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). In deciding which efforts to compensate, the court first determines whether

---

[2] Kelly cites two cases in support of its contention that Zaman's efforts here provided significant benefit only to himself. First, in *Baxter v. Salutary Sportsclubs, Inc.*, the court held that a plaintiff's success in getting a sports club to change its minimally defective membership contract provisions did not provide a significant public benefit. 122 Cal. App. 4th 941, 944 (2004). This case is distinguishable, however, because the court concluded that "there has been absolutely no showing of harm to anyone" from the *de minimis* contract defects. Second, *LaGrone v. City of Oakland*, in which a terminated municipal employee was reinstated after successfully arguing that his "bumping" rights had not been honored, 202 Cal. App. 4th 932, 946 (2011), is more similar to the facts here. Nevertheless, the actions of the plaintiff in *LaGrone* benefitted a much smaller class of individuals—specific municipal employees with bumping rights in their contracts—and also appears to have harmed the employees who were bumped.

10

the successful and unsuccessful claims are related. *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 903 (9th Cir. 1995). In making this determination, the test is "whether relief sought on the unsuccessful claim 'is intended to remedy a course of conduct entirely distinct and separate from the course of conduct that gave rise to the injury on which the relief granted is premised.'" *Id.* (quoting *Thorne v. City of El Segundo*, 802 F.2s 1131, 1141 (9th Cir. 1986)). The court next considers "whether the plaintiff's overall level of success justifies a fee award based on the hours expended by plaintiff's counsel." *Flitton v. Primary Residential Morg., Inc.*, 614 F.3d 1173, 1177 (10th Cir. 2010). Courts apply a similar standard when awarding fees to defendants who have prevailed in suits in which some, but not all, claims were frivolous. *Fox v. Vice*, 563 U.S. 826, 838 (2011). In such cases, "the trial court must determine whether the fees requested would not have accrued but for the frivolous claim." *Id*.

**1. Plaintiff's Fees.**

The court is not persuaded that Plaintiff's Labor Code claims are related to his unsuccessful FEHA and wrongful termination claims. Relief for the former claims is directed solely at Defendant's failure to timely provide access to or copies of personnel records. Defendant's failure is separate and distinct from whether its termination of Plaintiff's employment was discriminatory.

The court next determines which hours Plaintiff's counsel reasonably expended in obtaining the success Plaintiff achieved on his Labor Code claims. The court concludes that Plaintiff achieved full success on these claims on August 8, 2016, the date that Kelly tendered the statutory penalty. By this time, Kelly had already explained why it produced letters with different dates, so it should have been clear to Zaman that injunctive relief would not get him any additional files (and Zaman already had the original letters, so he knew that Kelly's changes to the documents were insignificant). As a result, any hours pursuing injunctive relief after this date were not reasonably spent. But until August 8, Plaintiff still had a reason to litigate—he could still obtain the statutory penalty. The tender of the statutory penalty thus gave Plaintiff, essentially, all of the relief he was going to get. Any litigation after this point was unnecessary.

Zaman also argues that the court should award fees beginning with his written demand for

11

his personnel file in March 2015. But litigation was not necessary at this point, because Defendant had not yet violated Section 1198.5. The court instead concludes that the hours Plaintiff's counsel reasonably spent on the litigation began with the complaint.

Unfortunately, based on the invoices submitted by Zaman's counsel, the court cannot determine precisely which hours were spent pursuing the Labor Code claims as opposed to the other claims. Most of the items for which fees are requested are not segregated by claim. Under such circumstances, the court may exercise its discretion to award a percentage of the fees requested, provided that its choice of a percentage is guided by reason. *Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1993); *see also Fox v. Vice*, 563 U.S. at 838 ("The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.").

The court is not persuaded by Kelly's argument that the court should limit its award of fees to one-sixth of the hours Zaman requested. Kelly asserts that this fraction is appropriate because the injunctive relief claim—the only claim standing after the summary judgment motion—is one claim out of six. Kelly further argues that Zaman's discovery was primarily focused on his discrimination claims, with only two of his requests for production pertaining to his personnel file. But Zaman's success was not limited to the claim left standing. Zaman also succeeded on his fifth claim for a statutory penalty by fully obtaining the relief sought for that claim (albeit through Defendant's voluntary actions). Further, many of Zaman's requests for production—considerably more than two—request documents related to Zaman's employment records. Kelly construes these requests too narrowly, and the 16.67% it asks the court to apply to Plaintiff's fees is too low.

On the other hand, the 40% requested by Plaintiff is too high. Zaman argues that the percentage applied for his Labor Code Claims should be closer to 50%, because the four discrimination claims were largely the same. Additionally, he argues that 38% of the argument contained in his opposition to Kelly's summary judgment motion pertained to his Labor Code claims. But while the Labor Code claims took up a large portion of Plaintiff's opposition, they were only 22% of Defendant's opening brief, Dkt. No. 30, and 20% of its reply, Dkt. No. 35. And

12

while the four discrimination claims may have been similar to one another, so, too, were the two Labor Code claims each like the other. In light of these considerations, the court determines that the appropriate percentage is 33%.

Zaman incurred fees of $44,242.50 for 133.2 hours of work between May 2015 and August 8, 2016. Dkt. No. 75, Parsons Decl., Ex. A. Applying the percentage to account for work on uncompensated claims, the court calculates that Zaman's fee totals for his Labor Code claims are $14,600.03 for 43.96 hours. Zaman also requests fees of $6,300 for the 16.8 hours spent preparing the present motion, Dkt. No. 75, Parsons Decl., Ex. B. Zaman's lodestar figure is thus $20,900.03. Zaman's attorney charged an hourly rate of $375 per hour. Based on the declarations of Jon Parsons and attorney John Steele, the court determines that this rate is reasonable and in line with this district's prevailing market rate. Dkt. No. 75, Parsons Decl.; Dkt. No. 87, Steele Decl.; Dkt. No. 88, Parsons Decl. The court declines to adjust the lodestar, and awards Zaman $20,900.03.

**2. Defendant's Fees.**

For the period from the filing of the summary judgment motion on August 8, 2016, to the issuance of the court's order on that motion on September 28, 2016, Kelly incurred $29,890.50 in attorney fees for 113.3 hours of work.

Zaman did not challenge the reasonableness of the hours spent or the number of attorneys and other staff that Kelly devoted to this case. The court nevertheless notes that for part of the period for which Zaman may recover fees, counsel was preparing for a pre-trial conference scheduled for October 3, 2016, and a trial scheduled for October 17. *See* Dkt. No. 18. The parties had failed to schedule a settlement conference with a Magistrate Judge during this period as required by the court's case management scheduling order. *Id.*, Dkt. No. 39. When the court became aware of this non-compliance, it ordered the parties to schedule a settlement conference and re-scheduled the pre-trial conference for November 29. Dkt. No. 39. The court determines that the fees incurred for trial preparation prior to the court's order re-scheduling the pre-trial conference were incurred as a result of the parties' non-compliance, and determines that these hours were not reasonably spent on the litigation. The court therefore subtracts 23.8 hours/$6,145.00 from the hours/fees incurred during the relevant period, for a new total of 89.5

hours/$23,745.50.

This amount, however, would compensate Defendant for work related to non-frivolous claims. As discussed above, the court may only compensate Defendant for fees that would not have been incurred but for the frivolous claims. Though Defendant's invoices provide a greater level of detail than Plaintiff's—in some instances, it is possible to relate tasks to particular claims—not all line-items segregate the claims. The court thus determines that justice again requires using a percentage allocation. As the discussion above regarding the relatedness and complexity of the claims applies equally to Defendant as it did to Plaintiff, the court will reduce Defendant's fees by 33% so that it is only compensating Kelly for work that would not have been performed but for the frivolous claims.

Applying the percentage to the figures above, Kelly incurred $15,672.03 for 59.07 hours of work related to Zaman's FEHA claims. In addition, Kelly also incurred 23 hours and $5,522.50 in fees for the preparation of the present motion, Dkt. No. 73, Connaughton Decl., and 17.2 hours and $3,773.00 in fees for the preparation of its reply, Dkt. No. 82, Connaughton Decl. Adding these amounts to the prior total, the sum is 99.27 hours and $24,967.53.

The hourly rates charged by Kelly's attorneys ranged from $150 per hour for a paralegal to $380 per hour for a partner. After reviewing the declarations of E. Joseph Connaughton and attorney J. Robert Shuman, Jr., the court is satisfied that these rates are reasonable and in line with the prevailing rates in this district. Dkt. No. 73, Connaughton Decl.; Dkt. No. 89, Shuman Decl. The court declines to adjust the lodestar and awards Defendant attorney fees of $24,967.53.

## COSTS

Zaman seeks costs of $2,399.85 and Kelly seeks costs of $5,790.36. Each party objected that the other should not be considered the prevailing party.

The prevailing party is the party who prevails as to the "substantial part of the litigation." *Testa v. Vill. of Mundelein, Ill.*, 89 F.3d 443, 447 (7th Cir. 1996). In light of the facts that (1) Kelly obtained summary judgment in its favor on five of the six claims (albeit by rendering one of the claims moot through its voluntary conduct), (2) the remaining claim was voluntarily dismissed, and (3) the discrimination and wrongful termination claims were more weighty than the Labor

14

Code claims, the court determines that Kelly is the prevailing party for the purpose of costs. After reviewing Kelly's bill of costs, the court awards Kelly $5,790.36 in costs. *See* Civil L.R. 54-3, Dkt. No. 74.

## CONCLUSION

The court grants-in-part Zaman's motion for attorney fees and grants-in-part Kelly's motion for attorney fees and costs. Kelly owes $20,900.03 in attorney fees. Zaman owes $24,967.53 in attorney fees and $5,790.36 in costs.

**IT IS SO ORDERED.**

Dated: 5/30/2017

---
HOWARD R. LLOYD
United States Magistrate Judge